UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.              Case No. 08-CR-71

**THOMAS BEHRENDT**
   **Defendant.**

## SENTENCING MEMORANDUM

Defendant Thomas Behrendt pleaded guilty to converting funds of the Social Security Administration, see 18 U.S.C. § 641, and I set the case for sentencing. In imposing sentence, I first calculate the advisory guideline range, then impose sentence under all of the factors enunciated in 18 U.S.C. § 3553(a). See, e.g., United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINES

The parties agreed that defendant's crime carried a base offense level of 6, U.S.S.G. § 2B1.1(a), and that he qualified for a 10 level enhancement based on the loss amount, § 2B1.1(b)(1)(F), and a 3 level reduction for acceptance of responsibility, § 3E1.1, producing a final offense level of 13. Coupled with his criminal history category of I, level 13 produces an imprisonment range of 12-18 months. I found these calculations correct and adopted them accordingly.

### II. SENTENCE

**A. Section 3553(a) Factors**

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2). This so-called "parsimony provision" represents the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

The district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place "any thumb on the scale favoring a guideline sentence," United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). The guidelines "are but one factor among those listed in 18 U.S.C. § 3553(a)," United States v. Carter, 530 F.3d 565, 578 (7th Cir.), cert.

denied, 2008 WL 4326492 (U.S. Oct. 20, 2008), and § 3553(a)(3) requires the court to consider non-custodial sentences even when the guidelines recommend prison, Gall, 128 S. Ct. at 602.

**B.   Analysis**

   **1.   The Offense**

Defendant's elderly mother received social security retirement and survivor's insurance benefits directly deposited into her M & I bank account. In the mid-1990's, she developed Alzheimer's, and defendant cared for her full-time for about five years, acquiring signature authority on the M & I account. Because he was unable to work during this time, defendant accumulated significant debts. In July 2000, while living abroad with defendant's son, defendant's mother died. However, her social security checks kept coming until June 2007 – a total of $174,543.50 in benefits. Defendant failed to take any action to stop the checks, even though he knew that the money accumulating in the M & I account properly belonged to the Social Security Administration.

Defendant used the money to pay off his personal debts, including the mortgage on the home he shared with his mother, to help his son pay for schooling, for cash advances, and to make purchases at places like Best Buy, Staples and Jiffy Lube. Defendant stated that most of the money went to pay medical and other bills associated with his mother's care during the last years of her life.

   **2.   The Defendant**

Defendant was sixty-four years old, with no prior record whatsoever. He held a master's degree in education and had worked as a teacher for much of his life, often with the poor and disadvantaged. Defendant was married for thirty years, and although the marriage ended in

3

divorce, his ex-wife made positive statements about him, describing him as a wonderful person. The marriage produced a son, age forty, who lived in Bolivia.

Defendant suffered from significant health problems, including Hepatitis C, which caused fatigue, edema in his legs and mental confusion. He also took medication for depression. Defendant admitted past use of drugs, but nothing recent, and all screens on pre-trial release were negative.

### 3. Guidelines and Purposes of Sentencing

The guidelines called for a term of 12-18 months in prison, but I found that this was a case where probation best served the purposes of sentencing set forth in § 3553(a). First, although the offense was serious based simply on the amount wrongfully obtained, I accepted defendant's contention that the circumstances of his having to provide full-time care for his mother for several years mitigated the crime somewhat. He was unable to work during this time and accumulated significant debt. There was also no evidence that he lived lavishly with this money. His purchases and expenditures appeared rather mundane. The guidelines in these types of cases focus almost exclusively on the loss amount, without considering such circumstances. See, e.g., United States v. Mueffelman, 400 F. Supp. 2d 368, 377-78 (D. Mass. 2005) (collecting cases); United States v. Milne, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005) ("With their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability."). Under the specific circumstances of this case, I found that a period of community confinement sufficed to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Second, given his age and physical condition, lack of record and otherwise pro-social behavior, I saw no need for prison to protect the public. See 18 U.S.C. § 3553(a)(2)(C).

4

Defendant presented no danger. Likewise, supervision in the community, with strict monitoring of his finances, sufficed to deter defendant from re-offending. See 18 U.S.C. § 3553(a)(2)(B).

Finally, a sentence served in the community best served the need to make restitution identified in § 3553(a)(7). A prison sentence would have caused defendant to lose his job, thereby impeding his ability to re-pay the SSA. See United States v. Peterson, 363 F. Supp. 2d 1060, 1062 (E.D. Wis. 2005) (finding that § 3553(a)(7) weighed in favor of a sentence that would allow the defendant to remain in the community and working, facilitating restitution). This sentence varied from the guidelines by just 2 levels, and because it was supported by the § 3553(a) factors discussed herein, it created no unwarranted disparity. See 18 U.S.C. § 3553(a)(6).

### III. CONCLUSION

Therefore, I placed defendant on probation for a period of five years. I selected the maximum term to ensure that he was monitored and paid restitution. As conditions, I required defendant to make regular restitution payments, perform community service in lieu of a fine, provide access to all financial information requested by the supervising probation officer, refrain from major financial transactions without prior approval, participate in a mental health treatment program, and comply with the conditions of home confinement for a period not to exceed 180 consecutive days. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

5